United States Court of Appeals to the Ninth Circuit is now in session. Good morning. I'm Judge Gould and I'm presiding over this remote argument. I'm delighted to be sitting today with Judge Bennett and Judge Nelson. And you should be able to see the full panel. I will also say on behalf of the whole panel, we all appreciate counsel appearing in the time of a pandemic. And if any of you need a little extra time on your arguments, just ask. Ask me and I'll give it to you. Without further ado, one more housekeeping point. We have three cases being argued today. We're going to take a break after the first two. And before we we should take about an hour before we do the final case. So if anyone needs to plan for that, they can be aware of that. We'll start with Silbersher v. Allergan. And for the appellants, we've got Ms. Erin Murphy and Andrew Hoffman. And for the appellee, we've got Mr. Singh. So I think we're ready to go. This case is set for only 15 minutes per side. And I think there's an agreement between Ms. Murphy and Mr. Hoffman to split time. Correct? That's right. Again, if you need a little extra time, we'll give it to you. Why don't we start with, I guess with Ms. Murphy. Is that the plan? That is, Your Honor. Between you and Mr. Hoffman, were you agreed that you go first? We did, yes. Okay, then please proceed and we'll have the court reporters start the clock at that point. Great. Thank you, Your Honor, and may it please the court. Erin Murphy on behalf of the Allergan defendants. And I'm going to endeavor to save three minutes of time for rebuttal. The relator Zachary Silberscher went on the internet, perused the PTO's official records of decade-old patent prosecution proceedings, and purports to have discovered lurking in plain sight a multibillion-dollar fraud on the federal government. That is exactly the type of parasitic claim that the False Claims Act public's disclosure bar is designed to foreclose. In fact, the bar forecloses his claim several times over. A patent prosecution is a quintessential federal hearing under the second prong of the bar. The PTO's official record of that hearing is a quintessential federal report under the second prong of the bar. And when the PTO publishes the official record of a patent prosecution proceeding on its pair website, it discloses both that hearing and that report to the public. Neither of those conclusions is in any tension with the government as a party limit in the first prong of the bar, because the first prong of the bar is concerned only with adversarial adjudications, which a proceeding to apply for a patent is not. And on top of all that, Mr. Silberscher has not even stated a viable FCA claim, because he fails to allege any express or even implied false statement or omission that involves a statutory, regulatory, or contractual requirement. Ms. Murphy, if we were to agree with you, what would, and I'll call it prong one, I think everybody will understand what I'm talking about, but if we were to agree with you, what would prong one cover that prong two doesn't cover? So as we see it, prong one covers adversarial adjudications, both in the courts, criminal and civil. And as for administrative, it would cover adversarial adjudications before an administrative agency. And then you'd ask for that third, for each of those prongs, whether the government is a party. So many of the adversarial adjudications before administrative agencies, the government is a party. If you take something like, you know, an enforcement action where you're typically going to have a general counsel or whatever, it may be serving as sort of the prosecutor and a defendant as on the other side of it. But there are proceedings that are between private parties, between in administrative agencies, something like, say, the copyright royalty board, which adjudicates disputes between private parties. Let me try to ask my question again. Maybe it wasn't clear. If we accept your reading of prong two, what would, in your reading, what would prong one cover that wouldn't be also covered by prong two? Sure. Tell me what kind of hearings would be covered by prong one, but not prong two. Right. All of those things I was just talking about, we don't think they're covered by prong two. So we don't think that prong two covers every government hearing under the sun. We agree that the words other federal hearing should exclude whatever is covered by the first prong. We just think the first prong is narrower than Mr. Silbershire does, whereas he would read it to cover essentially, I think, all executive branch proceedings. We think it only covers those proceedings that are adversarial. I understand that. But other federal hearing the way you're reading it is seems very, very, very broad. And I mean, that may be the way we have to read it under the plain meaning of the statute. But if other federal hearing is just basically so broad, that would seem to me to encompass, as far as I can tell, every federal criminal, civil or administrative hearing, whether the government's a party or not. So one strikes me as superfluous if you're reading of two is as broad as you say it is. Again, that may not make any difference given the plain meaning of other federal hearing, but it does seem like a strange way of writing a statute. So I want to be very clear. I think there may be a misunderstanding. It is not our position that other federal hearing in the second prong covers a criminal, civil or administrative hearing that's covered by the first prong. We don't think that other federal should be read to encompass every kind of other federal proceeding there is. Well, that's that's that's that's the problem I have. I don't know why if if other federal hearing has a very broad meaning that would encompass what you want it to encompass, why it also wouldn't encompass everything in prong one. So I think the reason it doesn't is because the court has to interpret the statute against a couple of settled canons of construction, one that you want to avoid superfluity and another that you want to try to harmonize what Congress has done to make sense of what it did. And Congress added the words other federal at the same time that it added the government as party limitation to the first prong. So I do think that that makes it incumbent on the court to find a way to understand these provisions where the second prong doesn't swallow the first and the first prong doesn't swallow the second. And we we have arrived at, I think, a reading of the statute that does that because we put one set of hearings in the first prong and a different set of hearings in the second prong. So you've got those adversarial adjudications covered by the first prong and only the first prong. So they aren't other federal hearings under the second prong. And conversely, the second prong, you know, doesn't it shouldn't be read so broadly that encompasses the criminal and civil and renders the entirety of the first prong superfluous. Now, I do think the words of the first prong strongly support that reading, because when you look at the first prong, it talks about criminal and civil proceedings, which are themselves adversarial adjudications. And it uses the word party, which is a word that in our judicial tradition is most commonly associated with adversarial presentation, plaintiffs and defendants, appellants and affilies. So if you look at those words in the first prong, you can find that Congress wasn't in the first prong trying to cover everything that an administrative agency does. It was focused in particular on adversarial adjudications. And if you give that first prong that sensible reading, then you avoid the result of having these large swaths of things that executive agencies do that wouldn't be covered by the public disclosure bar at all, because they are proceedings to which the government cannot be a party because there are no parties. And even if you thought of the participants as parties, the government's not going to be a participant in your typical proceeding, seeking a government benefit, seeking a government license. The government's not going to be a participant in many a hearing that's information gathering. So I think that avoids all of those bizarre results by saying you've got one prong that's focused on one type of hearing and another prong that's focused on a different type of hearing. I see I'm very close to my time, so I will try to save a little bit of time for rebuttal if I can. For your planning purposes, I'll give you some extra time on rebuttal. So you can have two minutes of rebuttal if that's enough. Thanks very much, Your Honor. Okay. Wait, let's make that three minutes. Plan for a three-minute rebuttal argument. Then we'll go to Mr. Hoffman, please. Thank you, Your Honor. Andrew Hoffman, on behalf of the Adamus defendants, may it please the court. The issue here is whether an FCA relater may base a key TAM action entirely on documents and information that a federal agency collected, analyzed, curated, and published for the world to see on a U.S. government website. That's exactly what happened here. Our relater copied the allegations, essentially verbatim, from records the Patent Office considered during prior patent examination. Mr. Silver, your claim? Counsel, can I ask about whether it sounded like you believe that this also falls within prong three, meaning news media. Is that one of your positions here? Judge Nelson, yes, that is one of our positions. We think there are three different parts of the statute that trigger the public disclosure. Okay, but if we found that it was within news media, we wouldn't have to decide these other questions, is that right? Or would we still have to decide for other purposes some of these other questions? I think you could decide news media and resolve the entire public disclosure question based on that. Of course, then we transition to the original source issue and consider whether or not Mr. Silvershire fits within that exception, and he doesn't. I'd hope to have some time to explain why not. But we could at least avoid the potential overlap between prong one and prong two. I think you could. I mean, I think under the old 1986 version of the public disclosure bar, the news media prong has always been very broad, and you could imagine that something disclosed, there's something discussed in the media, in the New York Times, for example, that that would trigger the bar, whether or not the government's a party, whether or not something discussed in the federal hearing. And the Supreme Court in a number of cases has said that the news media prong is especially broad, and there's been a consensus in the federal court before and after 2010 about the breadth. And that's, I think you're referencing the Schindler case from the Supreme Court. And you're right, they do take a broad interpretation of news media, although absent Schindler, I'm not sure I would have read news media as broadly as that, because news media does seem to imply there's some news source there. I wouldn't have normally read news media to just include the government posting something on the Internet. But that seems to be what the cases hold, and that seems to be your position. Am I correct in that? It is our position, and, Your Honor, I would just say that this court isn't writing on a blank slate on news media. Not only was there consensus among the federal courts going back, you know, 20, 30 years about what news media means and its breadth. Congress was aware, we presume that Congress was aware of the way the news media prong was applied leading up to the 2010 amendments. And when Congress enacted the 2010 amendments, they didn't touch the news media prong. They left it there. Other legislatures in the states do have sort of equivalent statutes, false claim backlogs. Like the New York legislature amended their statute the very same year, 2010, and they decided to narrow their news media prong. It tracks the federal statute almost entirely except the news media. And then they say no news media is news media except if it's merely disclosed publicly on the Internet. So they knew how to change it, and Congress didn't change it, you know, the federal legislature. I understand. I appreciate the argument. Can I ask quickly about the Amnial 2013 complaint? Is your position that that falls within public, one of these three prongs? That's my first question, and the follow-up question to that is for purposes of the original source inquiry, does the original source require that it be public under one of these three prongs, or does the original source have a broader implication of public? Thank you for that question. So I would say as to the first part of your question, Judge Nelson, we're not really arguing that the Amnial answer was itself a public disclosure. It's found on the private version of PAIR, which is for the parties to the applicants in the patent prosecution process. The reason we raise it is it's relevant exactly to the original source question that you're raising. And here in this instance, the relator says he can't point to any new or unique facts concerning the conduct constituting fraud on the patent office. Instead, he says it's my expertise that makes me an original source. I'm an expert patent litigator. That allowed me to bring this lawsuit. But the problem is he didn't actually leverage – well, there are two problems. One is expertise is not good enough, and I think there's basically consensus among the federal courts about that issue, and I can speak more about that. But even if you assume that he's correct and that his mere expertise counts as knowledge of information that is independent and that materially adds to the public disclosure, there was no – this relator didn't leverage any expertise whatsoever because it's a pure copy-and-paste job. I just want to back up. I get your point. I'm just not sure how that fits into the statute because the statute for original source, I think there's – again, we're dealing with two prongs. I don't think that the first prong applies. The second prong says an original source is someone who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions. And so to me, original source has to have some sort of publicity to the source material that you're relying on. So I'm wondering whether you can look – you may not need to, but the question is whether you can even look to the Amnial 2013 complaint for purposes of the original source analysis. Your Honor, I think you're right to focus on the second half of the original source test, and it says exactly what you said, knowledge that is independent of and materially adds to the publicly disclosed information. But then it goes on to say, and who has voluntarily provided the information to the government. I don't believe that expertise would count as information. You need to be disclosing factual information, and I would want to point the court to the Ampistar ruling in 2017, which is on all fours with this case. There, we still have the – so the independent knowledge prong was what was at issue there, and the court – this court defined independent knowledge for purposes of the public disclosure bar as relevant evidence of fraud acquired prior to the public disclosure. So I think that that resolves the issue. Counsel, if one was looking at knowledge that is independent of and materially adds to the publicly disclosed allegations, would that – would one look at that question purely as a matter of law, or would that be a question of fact where one would look at the – if it were teed up correctly procedurally in the light most favorable to the non-moving party with all inferences viewed in their favor? Or is it, in your view, purely a matter of law? I believe it's a question of law. I think it's one that this court can resolve, Judge Bennett. I don't think – we're on a motion to dismiss posture here, and so I would say that you just apply the Twombly-Iqbal standard and look at whether or not it's been – whether the knowledge that they assert has actually been plausibly alleged. With that, I'll just conclude by saying that we ask the court to reverse. Thank you. Mr. Hoffman, thank you. Now you're over your time slightly, but for your planning purposes, we'll give you several minutes for – give you three minutes for rebuttal, and Mr. Singh will give extra time to as well. So we can proceed with Mr. Singh's argument. Thank you, Your Honor, and may it please the court. Judge Nelson, I'd like to start with the question you raised, and I want to frame the case by explaining that we largely agree with Ms. Murphy that what's going on here is the hearings that are covered in prong one of the statute, the civil, criminal, and administrative hearings described in that prong are covered only in that prong and not elsewhere in the statute. And so the real question before the court – Hold on a second. How could this fall under prong one where prong one explicitly says the government has to be a party? Is your position that the government is a party in a patent prosecution proceeding? Oh, no, Your Honor. What I meant to say is the first question for the court is, is this proceeding before us a criminal, civil, or administrative hearing? If so, our position, and we believe Allergan's as well, is it is covered only if the government is a party, and it cannot be covered by the remainder of the statute. And so really the only question you need to decide is, is patent prosecution an administrative hearing? If it is, then you only look at whether the government is a party or not, and that resolves this question. And if it isn't, as you heard Ms. Murphy say, if the government isn't a party and it is an administrative hearing, it's not covered by the second prong. And to round out the answer on that vis-à-vis news media, it also can't be the news media. And the reason this is true, we explained this in our brief, is the Pacer example. Under the extremely broad interpretation of news media that the other side has offered to you, Pacer is the news media. It's a government website that puts out information, but it puts out information about every civil and criminal case, whether the government is a party or not. And so if you believe their news media argument to its fullest extent, it renders prong one meaningless. Prong one cannot do any work, because every public docket on Pacer is news media. And so, again, it all circles back to prong one. It circles back to the question, is a patent prosecution an administrative hearing? Now, under the plain text of this – So I'm not sure I understand why it all circles back to prong one. I have trouble getting past, or other federal hearing is just very, very, very broad. And if we looked at it with its plain meaning, why wouldn't it encompass the patent proceeding here, even though it's not covered by prong one? Why wouldn't other federal hearing simply be so broad? It would clearly, under the plain meaning of the statute, cover the proceeding at issue here. Your Honor, the reason is that the word other is doing some work there. Other federal hearing, you know, you can take the other to mean other than a congressional or GAO hearing, if you limit it just to prong two, if you limit the scope of other just to prong two. Wouldn't that be the natural way to look at it? Ordinarily, I would say probably. However, if you look at the Schindler elevator case, Your Honor, which you referred to earlier in the Graham County case, the Supreme Court has stressed that we look at this whole public disclosure bar as an integrated whole. That's Justice Thomas's opinion in Schindler. And when you look at it as a whole, and you're trying to figure out what other federal hearings are covered, we think the natural way to read that is it's not the civil hearings, not the criminal hearings, not the administrative hearings, not the congressional hearings, and not the GAO hearings. In other words, it's the residual category of hearings that hasn't already been specifically enumerated and addressed. And that's a very simple plain text way, Judge Bennett, to resolve the tension that you're talking about. And I'll add that it's the only way that really makes any sense. As you heard Ms. Murphy acknowledge, there is a need to reconcile these two prongs of the statute. Other federal hearing cannot mean all of the hearings covered by prong one, regardless of whether the government is a party, because it renders prong one meaningless. But even, but, well, I mean, whether it does or doesn't, that doesn't mean that that's not the plain meaning of the statute. In the 86 version of the statute, it said where GAO office report, hearing, audit, or investigation. And GAO was for audit and investigation and the old statute, right? I'm sorry, Your Honor. I missed just the last part of that. Okay. So in the 86, it said in the second half, or general accounting office report, hearing, audit, or investigation. And GAO was a modifier for report, a modifier for hearing, a modifier for audit and a modifier for investigation in the old statute, right? Not just GAO, Your Honor. So the best place to find this, if you have our brief in front of you, the old statutory text is reproduced at page A7 in the addendum at the back of the brief. I'm looking at the text. Okay, great. So as you see what it said before, is it said in a criminal civil or administrative hearing comma in a congressional administrative or government accounting office report, hearing, audit, or investigation. And so the set, what is now the second prong of the statute previously said in a congressional administrative or GAO report. So congressional administrative and GAO were the modifiers for, for all four categories. Exactly correct. And in the new statute, the word other is added. Yeah, but there's, there's two changes. There's a couple of changes I want to spotlight. This is I think very helpful to our side. First Congress took the word administrative out of the second prong and left it only in the first prong. And so when you ask is something an administrative hearing, which patent prosecution plainly is Congress was signaling to you, look to the first prong and only the first prong. We're taking it out of the second one. The second thing they did. You're right. They add other and they add federal. Right. And I think what they're doing here by adding other federal, it's important to look at it in context. At the time, the statute had been interpreted to include not only federal reports and the like, but also state and local ones. In context, the word federal is being added there as a word of limitation, not a word of expansion. The reason federal is put in is to carve out all of the state and local stuff. And so when you look at it and you say, okay, what is other federal doing here? I actually think the parties are on the same page about what it's doing. It's pointing to a residual category, at least as concerns hearings, a residual category of hearings, not already specifically dealt with by Congress. And there are canons of construction. You know, if you crack open Scalia and Garner on reading statutes, does the specific govern the general? Yes. And where are administrative proceedings dealt with in the first canon? Should we add words to the statutory text? No. And so adding a word like adversarial to the first prong, which the other side's interpretation requires you to do, that's a statutory. No, no. What Congress has done is it's very clearly said, here is the first prong. This is where you go. If it's a criminal civil or administrative hearing, you ask whether the government is a party. And the government wasn't a party to this patent prosecution. I do want to address one point. Ms. Murphy made, she said the government's not often going to be a party to these sorts of administrative ex parte, non-adversarial administrative proceedings. That is not true for patent prosecutions. The government and its agents are frequently parties to patent prosecution. In fact, the government holds the largest IP portfolio of anybody in the country. And so it's not true that the government and its agents are not parties to these proceedings. Mr. Singh, may I interject a question, please? Of course. I have one question and one comment. My comment is that because I'm giving an extra six minutes to Ms. Murphy, that Mr. Hoffman, I wanted to tell you and ask the court reporter. He had six minutes to Mr. Singh's time so that he knows he doesn't have to, to rush, to complete his arguments in this important case. The second point is my question. I wanted to focus on the, on the original source issue. And on that issue, I'd really like to know what Mr. Super sure added to the party here. It was what, what are there any facts that he brought to bear that weren't known to the government? Is it just, or is it just that he's an experienced lawyer and makes good arguments that he brought his creative arguments? So your honor, there are two things that I would point to on the original source site. And of course, if you find that there's original source only matters, if you find there's a public disclosure. So it relies on you rejecting everything I've said so far, as far as firsthand insider factual knowledge, the answer is no. Nothing new. However, I do want to highlight how this information appears to the public. Ms. Murphy says we perused what was on the internet and found this hiding in plain sight. That's not exactly right. The allegations in this case start with the comparison of two declarations filed by the same person years apart on different dockets relating to different patents. It's like finding two different needles and two different haystacks that contradict each other. No mean feat, not an easy thing to do. And then from there, understanding how those allegations, which are about the results of an esoteric medical study are intention with each other, translating that into a fraud on the patent office, and then going several steps further to understand how that affects drug pricing, that the government pays for drugs. We have in the record, the statement from the state of California that we cited and block quoted in our brief, which says this type of action is not the sort of parasitic or opportunistic lawsuit that the state looks down upon that nobody in the state government, at least, and we believe nobody in the federal government as well is doing this kind of work. And so what I would suggest your honor is that there's actually quite a lot of knowledge that is independent of the public disclosures and materially adds to them that creates the complaint in this case, even though there is no insider factual information of the kind that I think you may have been referencing. And it's important to know that under the new version of the statute, the 2010 version, what Congress did was it got rid of the old requirement. The old requirement required direct and independent knowledge of the fraud, which had been interpreted to mean firsthand insider knowledge of the fraud. It replaced it with the language we've been talking about independent of the materially adds to those public disclosures. Also the plain meaning of the word knowledge, knowledge can mean lots of knowledge. It doesn't have to mean the insider factual knowledge or factual knowledge about what's going on with the fraud. It can mean background expertise. And this court has never held otherwise in interpreting the statute. Now we understand that's an issue of some debate, but what I would recommend if the court is inclined to reach that argument, you might remand for the district court to address it in the first instance, but I would just step back a step and say, you only get there if you disagree with us about whether a public disclosure has occurred. And in this case, we think we have by far the better of the textual arguments for why it hasn't everybody agrees. The patent office is an administrative agency. Everyone agrees patent prosecution is a hearing. And so the question before you is, am I going to read the word adversarial into the first prong? That is the hill on which the other side lives or dies. Are you going to add the word adversarial to the first prong? There simply is no reason to do so. There is nothing about the phrase, the word administrative or the word civil that would cause you to think it has to be adversarial. We've pointed to examples. There are many examples of non-adversarial administrative hearings. We know that to be true. And so the question is just, are you going to pull in because the statute says civil and criminal, are you going to pull in an adversarial requirement, a qualifier into the administrative context? There is no reason consistent with the plain text to do so, including because as we note in our brief, there are lots of civil proceedings that are also not adversarial. The number one example of this is bankruptcies. Bankruptcies happen and they aren't adversarial all the time. Of course they can have adversarial components, but they're frequently not. And then on the flip side, the other side's narrative is that prong two only deals with non-adversarial hearings. That also is not true. The number one example of that is it includes GAO hearings. One of the things the GAO does is it adjudicates bid protests. Bid protests are when a party dissatisfied with a government contracting decision files a petition with the GAO and says, Hey, this agency messed up in awarding the contract, usually in awarding it to somebody else. Often those things are going to have allegations of fraud in them. And the GAO acts as a neutral arbiter, deciding the claim between the private party and the agency. Congress expressly included those adversarial proceedings in the second prong. So the other side's idea that there is a clean division in the statute, that prong one is only about adversarial hearings and prong two is only about these legislative and non-adversarial and inquisitorial hearings. I mean, you can just hear it as I say it. It's adding words left and right to the statute. Adversarial goes in prong one, inquisitorial goes in prong two. That's how they get to their interpretation. Now contrast that with our interpretation. You don't have to add words. Is it a civil criminal or administrative hearing? Those are the words Congress gave you. If so look to prong one and only prong one. If it's not one of those three kinds of hearings, move on to prong two. Is it a congressional hearing, a GAO hearing, or another federal hearing that we haven't already talked about under the plain meaning it's covered by prong two. If it's that kind of federal hearing. And then you have the other stuff, the reports, audits, and investigations. Now the other side, and I think, you know, I'll circle back to this Judge Nelson. We talked about this when talking about the news media point. The other side in us, I think, agreed that if it's covered by prong one. And let's use the easy example of a civil case between private parties. Everyone agrees a civil case between private parties is addressed by prong one and not within the scope of the public disclosure bar under that prong. Right. Because the government's not a party. It would be wrong to say that the docket sheet from that case is a federal report under prong two or is news media under prong three. It would just unravel altogether. The decision Congress made to carve those proceedings out of prong one. The pair docket sheet for patent prosecution is no different. Now we included a picture of one of these docket sheets in our brief, and it really shows you it's very, very, very similar to what you have when you look at a pacer docket sheet. And if you're looking along with our brief, you'll find this on page 12. Now we have here an illustration, a vivid one of what's going on. It's just a chronological regurgitation of the private parties filings. It's not anything like what you would think of when you think of what is a It's not anything like what you would think of when you think of the news media. Now. Oh, I will also add on the news media point judge Nelson. Well, yeah, I want, let me ask. Cause I mean, I would agree with you when I'm just reading news media, but as has been pointed out, we're not writing on a blank slate. And you've got a Schindler, which gives a very expansive view of it and a bunch of other cases that, that adopt that as well. So what, what do we do with those? Sure. I would like to take you to Schindler specifically. So Schindler does not interpret the phrase news media in Schindler. The question was whether the response to a FOIA request is a federal report under the second prong. And when the court was trying to figure out the answer to that, it said, we're going to give it a broad, ordinary, the word report, a broad ordinary meaning. And this is under the pre-amendment version of the public disclosure bar. So the specific analysis doesn't apply that much, but what the court says is we're going to look to all the sources in the public disclosure bar to determine how, whether we should give it a special meaning. And the court says one of the provisions is the news media. And we think that suggests a broad sweep. That's it. It says the reference to news media, which the court of appeals did not consider suggests a broader scope than the plaintiffs in that case suggested for the scope of public disclosure and prong too. But it didn't say anything about the internet. It didn't say a government website like Pacer was news media. I mean, it's reading a lot into the Schindler decision to say that it was interpreting the phrase news media at all, or suggesting that you should do anything other than give that phrase it's ordinary meaning. Now as to the phrases, Which is what of course the court did elsewhere in Schindler gave words, their ordinary meaning. And as you say, judge Nelson, I agree with you. The phrase, the news media, the ordinary meaning of that is not everything on the internet. And it's not ordinarily government websites like Pacer or pair. It's the professionals who comment and report the news for a living. That's the news media, which is the statutory phrase. And again, this is just a standard, you know, Scalia and Garner reading law point that the fair meaning of a statutory text does not mean the hyper literal or broadest meaning of every word in the text. It means we look at how people use these words in the ordinary English language. And we come up with an interpretation that makes sense, which is exactly what judge Spiro did in this case. And exactly what other cases. Asking this exact same question about pair have done. So if you look at note, you're right. You're not writing on a blank slate and that a few cases have interpreted news media broadly to cover the whole internet. Those cases are not binding and they're not persuasive. The cases that have talked about the plain meaning of news media have come out the other way. And we think that those are the more compelling authorities as you interpret that statutory phrase from the ground up, including for the very important reason that I gave earlier, which is that reading it as broadly as the defendants want you to will render prong one superfluous. It will bring in pacer, which is a devastating argument that they don't have an answer to. And so for those reasons, we think the only reasonable way to read the statute is you simply ask, is this an administrative hearing? Plainly it is. It happens before an administrative quasi judicial official, a patent examiner. And I just want to hammer this point down before my time expires there. The authorities, including controlling precedents of this court say that patent examiners are quasi judicial officials and that's what they're doing. The private party is bringing to them a claim for relief. Give me a patent. The examiner is weighing that claim against statutory criteria and deciding grant the patent. Don't grant the patent. The process is a little iterative, but it's fundamentally an adjudicative process, an administrative hearing and therefore covered under the best readings of the first prong and excluded from the others. Thank you, your honor. Thank you, Mr. Singh. Ms. Murphy. Thank you, your honor. I'll just give you a few quick points specifically dealing with the public disclosure bar. First you heard Mr. Singh say repeatedly that we're adding words to the statute because we've heard that the court should interpret administrative to mean adjudicative adversarial proceedings, but one could make the exact same critique of his argument because he doesn't think administrative really means every single thing a federal agency does. If it did, then the words other federal hearing in the second prong would be superfluous. There would no longer be any other federal hearings to cover if administrative encompassed all agency actions. And therefore he says read administrative to mean executive administrative. I think that's his position, at least in his briefing, the word executive is not found in the first prong of the, of the bar either. And it, unlike adversarial adjudication is not something you can infer from any of the words in the first prong because criminal civil and party have nothing to do with executive versus other agencies. They have to do with adversarial adjudications, but yet under his reading, he says that for some reason, you know, if it's a proceeding by the sentencing commission, it goes in the second prong just because the second, the sentencing petition happens to be housed in the judiciary rather than the executive branch, even though the sentencing commission is subject to all of the same administrative procedure act requirements as an executive agency. So ultimately it's not a question about reading words into the statute. It's just a matter of applying the principle that justice Scalia was one of the first to always press, which is you have to read text, not in isolation, but in light of the text surrounding it and the context surrounding it. And here you have the context of the second prong telling you that there have to be some universe of other federal hearings left for the second prong to deal with after you interpret the first prong. And when you take that principle and read the first prong and look at the word administrative in light of the other words in that list, criminal and civil, and in light of the government as party limitation, and the fact that it refers to parties, that is the best reading that the first prong deals with adversarial adjudications. Otherwise you'd end up with a world in which you have all sorts of executive branch hearings, things like notice and comment proceedings, information gathering hearings by an agency, any type of proceeding where you're asking for benefits, they would buy in large, be completely excluded from the public disclosure bar. And it may be the case that the patent is one of the relatively unusual things that a government actor can ask for and be the applicant. And by the way, the patent statute refers to that actor as the applicant, not as a party. But most of these proceedings, if you think about applicants for social security benefits, for eligibility for Medicare or Medicaid, to participate in welfare programs, all of those proceedings, you're never going to have a government actor in their official capacity participating in that proceeding. They're going to be the decision maker. And Congress enacted a statute that made sensibly concluded that when the government agency is being the decision maker, it's taking information and iterative process and saying, should we exercise our powers to recognize, confer this right benefit, whatever it may be. That's the situation in which we're perfectly happy to assume that the government has sufficient knowledge to pursue false claims at claims on its own. Thank you, Your Honor. Thank you, Ms. Murphy. We'll go to Mr. Hoffman. Thank you, Your Honor. I'll just quickly respond to some of the points Mr. Singh made with respect to the original source issue. I believe I heard him say that with respect to the mere expertise question and whether or not that can qualify one to be an original source, that this court has never held otherwise. That's just not accurate. So I would direct the court respectfully to page 25 of our brief, which quotes from this court's decision in a one ambulance. And it says, you know, we reject the contention that a one unique knowledge removed the bar. There is no exception to the statute. The mere fact that a one zone expertise in the area of emergency ambulance services may have enabled it to formulate its novel legal theory of fraud is irrelevant. If a relator merely uses his unique experience or training to conclude that material elements argue in the public domain or a false claim, then the key time action cannot proceed. And I acknowledge that as a pre 2010 decision of this court, but what the original source test still require still has the independent element. And Mr. Singh is only pointing to the fact that Congress removed the direct knowledge requirement, but it kept the independence requirement and independence has been interpreted by this court to mean relevant evidence of fraud acquired prior to the public disclosure. And there's just nothing like that in this, in this complaint. And judge Gould, you're absolutely correct to point out that there's no new factual information there. There was a reference to the statement of interest from the state of California and how it was welcoming of relator actions like this one. I guess I'd point out a few things. One is that the state of California doesn't enforce the false claims act, the federal false claims act, and that the United States government and department of justice has never adopted this position that the state of California seems to have proffered. I'd also point out the state of California statement of interest doesn't construe the statute. It doesn't deal with the text at all. It's making a policy argument and raising a concern about how difficult it would be for the government to gain knowledge or awareness to be put on notice of the information that's been added to the public pair website. But I don't think that there's any sort of harsh, harsh results from what the defendants and the appellants they're asking for in this case, the bottom line is every single piece of information that's put on the public pair website has been collected and analyzed, if not drafted by a federal official. That's the first thing they're not potted plants. If they perceive fraud, they could report that fraud. We'd expect, I think federal employees to report a fraud on the United States. And I think I'd also point out that even if the Adamus, you know, that, that the, the result, you can rule for us, you can reverse the district court. And that doesn't mean that everything on the public pair website could never become the basis or become an appropriate source for a key Tam action under the statute. If you look at 37 30 E four of the false claims act, an action brought by this type of whistle or this type of relator could proceed. If the government intervened and this type of action could receive, it could proceed. If the relator is an original source, meaning that they have their own independent and materially new information to add that didn't happen here. And that's why Mr. Silver, she's not in the retail store. Thank you. Thank you, Mr. Well, This case is one of the more challenging cases that the panel will see. And we appreciate the very knowledgeable and skillful arguments of all the We will now submit this case. And the parties will hear from us in due course. Okay. And hearing nothing, Tanya, please know the case is submitted.
judges: GOULD, BENNETT, NELSON